IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

DOCKET NO. 3:05CR93-V

UNITED STATES OF AMERICA     )
                             )
         v.                  )
                             )
ERIK B. BLOWERS,             )
                             )
         Defendant.          )

FILED
CHARLOTTE, N. C.

JUN 13 2005

U. S. DISTRICT COURT
W. DIST. OF N. C.

DOCKET NO. 3:02CR93-V

UNITED STATES OF AMERICA

         v.

DENNIS PLAKSIN, et al.

### MEMORANDUM AND ORDER

**THIS MATTER** is before the Court in <u>United States v. Blowers</u> on two motions and memoranda filed May 13, 2005 by The Charlotte Observer Publishing Company, d/b/a The Charlotte Observer ("The Charlotte Observer"), captioned "Motion to Intervene" (document #16); "Memorandum In Support Of Motion to Intervene" (document #17); "Motion In Opposition to Sealing Of Search Warrant, Search Warrant Materials And Related Motions" (document #18); and

"Memorandum of Law In Support ... " (document #19); and on parallel motions filed by WCNC-TV, Inc. ("WCNC-TV") May 26, 2005, captioned "Motion To Intervene" (document #25) and "Motion In Opposition To Sealing Of Search Warrant Materials And Related Motions" (document #26) (joining in and incorporating The Charlotte Observer's argument for the same relief).

**THIS MATTER** is also before the Court in <u>United States v. Plaksin, et al.</u> on related motions and memoranda also filed by WCNC-TV on May 26, 2005, which documents are captioned "Motion To Intervene" (document #163); "Memorandum Of Law In Support Of Motion to Intervene" (document #164); "Motion To Unseal Sealed Documents" (document #165); and "Memorandum Of Law In Support Of Motion To Unseal Sealed Documents" (document #166). On June 2, 2005, The Charlotte Observer filed parallel motions in <u>Plaksin</u>, captioned "Motion to Intervene" (document #170); and "Motion To Unseal Sealed Documents" (document #169).

The documents which are the subject of the <u>Blowers</u> motions--an application for a search warrant with an attached affidavit, the search warrant itself, the inventory of items seized (which was attached to the search warrant after it was executed and returned), and the motion and order to seal--have been carefully reviewed <u>in camera</u> by the undersigned, as have the related documents and items which are the subject of the <u>Plaksin</u> motions. The latter include "(1) sealed documents [in the <u>Plaksin, et al</u>. file], including but not limited to documents [number] 70, 71, 79, 80, 81, 82, 86, 107,

2

108, 109, 138, 151, and 159; (2) documents related to knowledge of potentially unethical activities by FBI agents on the part of individuals employed by the FBI or the United States Attorney's office; and (3) any other records filed with the Court related to said sealed documents, including but not limited to any motions to seal said documents." ("Memorandum Of Law In Support Of Motion To Unseal Sealed Documents" filed by WCNC-TV, Inc. on May 26, 2005, at 1.)

The only parties which have filed responses to the subject motions and memoranda are the Government ("Government's Consolidated Response To The Motions Of The Media Parties To Intervene And In Opposition To Sealing Of Search Warrant Materials And In Opposition To Sealing Of Search Warrant Materials" filed May 31, 2005 and "Government's Consolidated Response To The Motions Of The Media Parties To Intervene And To Unseal Sealed Documents" filed June 8, 2005), and Defendant Erik B. Blowers. Mr. Blowers filed a "Motion To Intervene" and two substantive responses on June 2, 2005, a "Brief in Opposition to Motions to Unseal Materials" and a "Supplemental Brief In Opposition To Motion To Unseal Materials," which was itself filed "Under Seal."

Although counsel for each of the parties in the older case--Dennis Plaksin, Brian Keith Ladner, and Kendall J. Ladner--were served with copies of the subject motions, none chose to file a response (or to participate, through counsel, in the hearing described below). From their silence, the Court assumes that none of the Defendants in this closed 2002 case, all of whom have

3

already been convicted and sentenced, have any objection to the unsealing of the subject documents.

A hearing was conducted by the undersigned on June 8, 2005. Present at the hearing were counsel for the intervenors (Jonathan E. Buchan for The Charlotte Observer and Sarah W. Higgins for WCNC-TV, Inc.); counsel for the Government (Daniel A. Petalas and William J. Corcoran of the U.S. Department of Justice Public Integrity Section and D. Scott Broyles and Edward Ryan of the U.S. Attorney's Office in Charlotte); and Defendant Erik B. Blowers and his attorney (Christopher C. Fialko).

## I. **FACTUAL AND PROCEDURAL BACKGROUND, AND CONTENTIONS OF THE PARTIES**

During the investigation of Defendant Erik B. Blowers, the Government applied for and obtained a search warrant to search his office at the Federal Bureau of Investigation Field Office in Charlotte. The application, affidavit and search warrant were dated September 1, 2004, and the search warrant was executed the next day. On September 9, 2004, the executed search warrant was returned to Magistrate Judge E. S. Swearingen as required by Fed. R. Crim. P. 41(f). However, rather than being docketed and thereafter available for public inspection, as is customary in the absence of exceptional circumstances, the subject documents have since remained under seal.

On April 12, 2005, the Defendant Erik B. Blowers, a Federal Bureau of Investigation ("FBI") Special Agent then also serving as Chief Division Counsel to the FBI's Charlotte Field Office, was

4

indicted for making a false statement on a matter within the jurisdiction of a federal agency. At issue are travel and recreational activity worth thousands of dollars that Mr. Blowers allegedly received from a Charlotte-based builder, David Simonini, in connection with trips to Las Vegas, Nevada. Mr. Simonini, who was being handled by Mr. Blowers in his capacity as "Case Agent," subsequently pled guilty to fraud and money laundering offenses and is currently in federal prison.

As The Charlotte Observer and WCNC-TV note in their motions and memoranda, the Blowers case has already attracted significant interest among the news media. The current U.S. Attorney, Gretchen C. F. Shappert, was quoted in one of the news articles, a copy of which is attached at Tab 1 to The Charlotte Observer's "Memorandum Of Law In Support Of Motion To Intervene," stating that she was "unaware of any FBI agent ever being indicted in this district," which is certainly one reason for the media/public interest in the Blowers case. Indeed, the prospect of law enforcement agents executing a search warrant at the offices of one of the leading law enforcement agencies in the world, searching for evidence of criminal activity on the part of their Chief Counsel (and the office's lead ethics officer), is inherently a matter of great public interest.

The Government essentially concedes this point in regard to the search warrant materials in its "Consolidated Response filed

5

May 31, 2005." Although the Government "does not concede the accuracy of any factual averments made by the Media Parties," its conclusion clearly favors full public disclosure of the search warrant materials. The Government's Response concludes:

> The government has reviewed materials that remain under seal in this case in the context of the Motions to Intervene and in Opposition to the Sealing of the Search Warrant and Materials Related to the Search Warrant. The government has also considered the facts and circumstances that presently obtain regarding the investigation, as well as the facts contained in the materials related to the investigation. In light of that review, and in light of the review of certain of the authorities cited by the movants in support of their Motions, the government does not oppose the specific relief sought by the Media Parties in their Motions in Opposition to the extent to which any materials may fit the description of documents sought in those Motions.

Id. at 3.

The second Government Response, filed June 8, 2005, stopped short of conceding the "Media Parties" request for relief, but neither did it actively oppose it. Rather, after conceding that the Plaksin/Ladner case was closed and the interests of the Government in the Blowers' case was distinguishable, the Government invites the Court to consider five broad "government[] interest[s]" in deciding whether to unseal the documents and photographs in the 2002 case. The identified government interests are: "(1) Protecting Blowers' Sixth Amendment Right to a Fair and Impartial Trial; (2) Avoiding Scandal; (3) Protecting Against Dissemination of Discovery Material Entrusted to the United States Attorney's Office Not Relevant to Defendants' Substantive Rights; (4) Protecting the Privacy Interests of Third Parties Mentioned or Depicted in the

6

Documents Whose Identities Are Not Relevant to Defendants' Substantive Rights; and (5) Protecting/Encouraging the U.S. Attorney Office's Intention to Seek Judicial Review of Certain Issues."

Thus, the only party actively arguing for the continued sealing of the search warrant materials at this point is Defendant Blowers, and he is only asking the Court to redact four footnotes (footnotes 3, 4, 10, and 11) and two paragraphs (paragraphs number 53 and 55) in the affidavit in support of the search warrant. The undersigned has carefully reviewed these targeted provisions--which assert that criminal activity occurred in Blowers' presence during the Las Vegas trips, that he participated on at least one occasion in criminal conduct himself, and that he engaged in what many would regard as immoral and/or unethical conduct on multiple occasions while traveling with Mr. Simonini.

The sealed documents and photographs in the Plaksin file, which are the subject of the second round of motions and memoranda, simply corroborate and provide a factual foundation for the allegations the Defendant seeks to keep from the public eye in the affidavit in support of the search warrant. As in the Blowers file, most of the sealed documents in the Plaksin file are non-controversial. For example, documents number 70, 71, 107, 108, 109, 138, 151, and 159 all address witness subpoenas and expenses, an indigent defendant's travel expenses, or delaying a defendant's

date for reporting to prison (so he could continue to cooperate with the Government). Of the identified sealed documents, only numbers 79, 80, 81, 82, and 86 (and number 89, which is not identified) address the more sensitive subjects which Defendant Blowers asks the Court to keep under seal.

Without disclosing the precise contents of these documents and items, as previously noted, they are little more than the factual basis for the allegations in the affidavit in support of the search warrant. Document #79 is the "Government's Motion In Limine" to exclude reference to Mr. Blowers' allegedly criminal, immoral and/or unethical conduct during cross-examination of one of the Government witnesses (David Charles Smith) during the Ladners' trial. The Government's reasons for sealing and excluding the reference to Blowers' conduct in the Ladners' trial--before Mr. Blowers was indicted--is obviously quite separate and apart from whether the information should be made public in regard to Mr. Blowers' pending charges.

Similarly, document #80 is the "Government's Motion For In Camera Review," asking the District Judge who would soon be presiding over the Ladners' trial (the Honorable Richard L. Voorhees) to review Mr. Smith's proffer and 25 color pictures describing and depicting Mr. Blowers, Mr. Simonini, and others engaging in the aforedescribed conduct, and thereafter to advise the Government whether it had an obligation to share these materials with the Ladners. Document #81 is the "Government's Supplemental Motion For In Camera Review," attaching what are

8

commonly referred to as "FBI 302s" (memoranda of interviews with David Charles Smith), and a memorandum from the Charlotte FBI Office to the FBI's Office of Professional Responsibility dated July 24, 2001 (reporting Blowers' alleged misconduct). Again, the Government simply asks the District Judge about to try the Ladners to "enter an order that the United States is under no legal obligation to disclose the documents to the defense in [the Ladners'] case." Document #82 is Judge Voorhees' Order, resolving the motions in sealed documents #80 and #81 (described above), granting the motions for in camera review; deferring ruling on whether to allow reference to the contents of the documents until trial; but requiring copies of the documents to be provided to the Ladners' attorneys, albeit with "the names of law enforcement officers" redacted and with a stern warning to defense counsel not to disseminate the information for any other purpose.

Document #86 is the "Government's Second Supplemental Motion For In Camera Review" which asks the District Judge to review similar, corroborative information provided about Mr. Blowers' conduct by a second Government witness (Christian Bock). Like David Charles Smith, Mr. Bock advised law enforcement that he had observed Blowers engaged in criminal, immoral, and unethical conduct, which the Government believed to be "likewise immaterial to the issues in [the Ladners'] case." And finally, sealed document #89 (not specifically identified by number in the subject motions) is the "Government Motion In Limine," briefing its request that Judge Voorhees preclude cross-examination of David Charles

9

Smith by defense counsel--in the Ladners' trial--concerning Blowers' alleged misconduct.

## II. CONCLUSIONS OF LAW

### A. Motions To Intervene

As The Charlotte Observer and WCNC-TV correctly urge, both the Supreme Court and the Fourth Circuit Court of Appeals have long recognized the public's right to open access to court records and proceedings. See, e.g., Press Enterprise v. Superior Court, 464 U.S. 501 (1984)(order sealing transcript of voir dire proceedings violated right of access to judicial proceedings and records); Globe Newspaper Co. V. Superior Court, 457 U.S. 596 (1982)(statute excluding public, including media, from testimony of minors in sex abuse cases held unconstitutional); Richmond Newspapers v. Virginia, 448 U.S. 555 (1980)(exclusion of public, including media, from criminal trial violated First Amendment); In re Washington Post Company v. Hughes, 923 F.2d 324 (4th Cir. 1991)(public has presumptive right to information related to search warrants, and any denial of that right must be supported by specific findings); In re Baltimore Sun Co. V. Goetz, 886 F.2d 60 (4th Cir. 1989)(same); and In re Charlotte Observer, 882 F.2d 850 (4th Cir. 1989)(recognizing the public's presumptive right of access to criminal trials, pre-trial proceedings, and judicial records).

In Baltimore Sun Co. v. Goetz, 886 F.2d at 65, the Fourth Circuit specifically approved the right of the media as a representative of the public--in that case the company which

publishes the Baltimore Sun--to intervene in opposition to the sealing of a search warrant and related materials. And as the movants in this case note, intervention by the news media has also been an accepted vehicle in this and other federal courts in North Carolina to contest the sealing of search warrants and related materials. See The Charlotte Observer, supra; In Re Search Warrants, 26 Med.L.Rep. 2564 (M.D.N.C. 1997)(Orders of Magistrate Judge Sharp and Chief Judge Bullock allowing intervention by newspaper and unsealing affidavit in support of search warrant, copies of which are attached to The Charlotte Observer's "Memorandum Of Law In Support Of Motion To Intervene" at Tab 5); and In The Matter of the Search of the Premises Known As: L. S. Starrett Company, 2002 WL 3144622 (M.D.N.C.), 31 Med.L.Rep. 1712 (2002)(Orders of Magistrate Judge Eliason and Chief Judge Bullock allowing intervention of newspaper and denying motion to seal, copies of which are attached to The Charlotte Observer's "Memorandum Of Law In Support Of Motion To Intervene" at Tab 6).

Although Defendant Blowers opposes unsealing the above-noted provisions in the affidavit in support of the search warrant (as noted above), and likewise opposes unsealing of the statements and photographs in Plaksin on which those provisions were essentially based, he does not specifically address the motions to intervene. Nor does the Government oppose intervention, and the above-cited authority clearly permits it.

Accordingly, for these reasons, and for the further reasons stated in The Charlotte Observer's and WCNC-TV's motions and memoranda in support, the "Motions to Intervene" will be granted.

B. **Motions In Opposition to Sealing Of Search Warrant Materials And Related Items in Plaksin, et al**.

As noted in the preceding section, the Supreme Court and Fourth Circuit Court of Appeals have long recognized that the public, including the media, have a presumptive right of access to court proceedings and records. This presumptive right of access applies to search warrants and related documents. Accord Washington Post Co., 923 F.2d at 331; Baltimore Sun Co. V. Goetz, 886 F.2d at 65; and In The Matter of the Search of the Premises Known as: L. S. Starrett Company, 31 Med.L.Reptr. at 1720.

Against this presumption in favor of openness and public disclosure, as the intervenors concede, there are exceptions which warrant sealing. However, when opposed by the public, the decision to seal should be made only after hearing argument to the contrary and then only when "supported by specific findings" including a statement of "the reasons for rejecting alternatives to sealing...." Washington Post, 923 F.2d at 327. Accord Baltimore Sun, 886 F.2d at 65 (decision to seal all or any part of search warrant and related papers should be made only after public representative opposing sealing has an opportunity to be heard).

Where specific information in court documents is sufficiently sensitive to justify sealing, the proper action is to seal only that information, providing redacted copies to the individual or

entity requesting disclosure. See Baltimore Sun, 886 F.2d at 65-66. Furthermore, the examples of the kind of information which is properly sealed from public view have been narrowly drawn; for example, protecting the identity of "informers whose lives would be endangered" or sensitive information which could compromise an ongoing investigation are two examples of the categories of information which may properly remain under seal. Id. at 64.

On the other hand, as the intervenors point out, the Fourth Circuit has not been receptive to the argument that avoidance of pretrial publicity is a legitimate ground for sealing court documents or proceedings, preferring questioning during voir dire to eliminate individual jurors whose objectivity may have been compromised by prior media coverage. As the Court explained in Washington Post:

> The reason that fair trials can coexist with media coverage is because there are ways to minimize prejudice to defendants without withholding information from public view. With respect to 'the potential prejudice of pretrial publicity,' this circuit recently observed that '[v]oir dire is of course the preferred safeguard against this particular threat to fair trial rights ... [and] can serve in almost all cases as a reliable protection against juror bias however induced.' In re Charlotte Observer, 882 F.2d 850, 855-56 (4th Cir. 1989). 'Through voir dire, cumbersome as it is in some circumstances, a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict.' Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 15.

923 F.2d at 329.

Applying these principles in In Re Search Of The Premises Known As: L. S. Starrett Company, Magistrate Judge Eliason and Chief Judge Bullock rejected arguments that sealing was necessary

13

to protect the privacy, reputation, or stock value of a large publicly traded company, or to protect the privacy or reputation of individual employees named in an unflattering way in the documents. Rather, the Judges in that case ordered disclosure of the subject documents redacted only to the limited extent necessary to protect confidential informants and/or information which might compromise an ongoing investigation, and the Fourth Circuit affirmed.

Against these clearly established legal principles, one must view Defendant Blowers' argument that unsealing the unflattering information about his alleged misconduct would deny him a "fair trial" with a jaundiced eye. There are no confidential informants in this case who need to be protected. Mr. Blowers has been indicted; there is no ongoing investigation which requires protecting. And while Defendant Blowers is certainly correct that there is no absolute right of access on the part of the public or media to court documents or proceedings--and that he is constitutionally entitled to a fair trial--there is nothing in this record which would support continued sealing or to indicate that Blowers' right to a fair trial would be compromised by unsealing.

Of course, Defendant Blowers is also correct that the evidence he seeks to keep from the public eye is "prejudicial," as indeed is true of all probative evidence of a Defendant's guilt. But the Defendant's cries of prejudice are misguided for two primary reasons. First, this is an issue which is best addressed at trial, that is, once voir dire has insured that a neutral and impartial jury has been selected, the trial judge can determine whether or

not to allow evidence or information to reach that jury on a point-by-point basis. Limiting instructions can be given where appropriate. This is the import of the Rules of Evidence in general and of Rule 403 in particular, which after all only prohibits admission of evidence where "its probative value is substantially outweighed by the danger of unfair prejudice...."

The second reason the Defendant's prejudice argument fails is that, even if the public disclosure and admissibility of evidence standard <u>were</u> the same, the evidence in this case is not nearly so "prejudical" as evidence in other cases the Fourth Circuit has held to have been properly <u>admitted</u>. <u>See, e.g.</u>, <u>United States v. Leftenant</u>, 341 F.3d 338, 346 (4th Cir. 2003)(evidence that counterfeit currency bearing same serial number was passed successfully in transactions in which government stipulated the defendant was <u>not</u> involved), <u>cert. denied</u>, 124 S. Ct. 1183 (2004); <u>United States v. Myers</u>, 280 F.3d 407, 413-14 (4th Cir.)("gruesome details" of victim's shooting and death), <u>cert. denied</u>, 537 U.S. 852 (2002); <u>United States v. Obi</u>, 239 F.3d 662, 667-68 (4th Cir.)(evidence that defendant met his co-conspirator while both were incarcerated), <u>cert. denied</u>, 534 U.S. 835 (2001); <u>United States v. Van Metre</u>, 150 F.3d 339, 350-53 (4th Cir. 1998)(testimony of prior victim of abduction and repeated rape in subsequent trial for kidnapping, sexual assault, and murder); <u>United States v. Love</u>, 134 F.3d 595, 603 (4th Cir.)(testimony that defendant "had a prior record for murder [and] that he had killed a rat and went to prison for it"), <u>cert. denied</u>, 524 U.S. 852 (2002); <u>United States v.</u>

Queen, 132 F.3d 991, 997-98 (4th Cir. 1997)(evidence of witness intimidation in prosecution for witness tampering nine years later), cert. denied, 523 U.S. 1101 (1998); United States v. Aramony, 88 F.3d 1369, 1377-79 (4th Cir. 1996)(evidence of defendant's sexual advances toward company employees in mail and wire fraud prosecution); United States v. Powers, 59 F.3d 1460, 1464-68 (4th Cir. 1995)(evidence that defendant routinely beat his children and wife; that he "disciplined" his children by forcing them to eat hot peppers; and that he once threatened to burn down the home with his wife and children inside); United States v. Analla, 975 F.2d 119, 126 (4th Cir. 1992)(photographs of gunshot wounds in victim's face and victim lying in a pool of blood); and United States v. Melton, 970 F.2d 1328, 1331 (4th Cir. 1992)(evidence of related but unconvicted murder).

### III. ORDER

**FOR THE FOREGOING REASONS, IT IS HEREBY ORDERED:**

1. The Charlotte Observer's, WCNC-TV's, and Erik B. Blowers' "Motions To Intervene" in United States v. Blowers (Blowers) and United States v. Plaksin (Plaksin) are each hereby **GRANTED**.

2. The Charlotte Observer's and WCNC-TV's "Motion(s) In Opposition to Sealing Of Search Warrant, Search Warrant Materials And Related Motions" in Blowers are **GRANTED**, that is, these documents are hereby **UNSEALED** in their entirety.

3. WCNC-TV's and The Charlotte Observer's "Motion(s) To Unseal Sealed Documents" in <u>Plaksin</u> are likewise **GRANTED**, that is, all documents and items in that case are also hereby **UNSEALED**.

4. The Clerk is directed to send copies of this Memorandum and Order to all counsel of record, including <u>but not limited to</u> the following:

> Noel L. Hillman
> United States Department of Justice
> Public Integrity Section
> 1400 New York Ave., N.W., 12th Floor
> Washington, D.C. 20005
>
> William J. Corcoran
> United States Department of Justice
> Public Integrity Section
> 1400 New York Ave., N.W., 12th Floor
> Washington, D.C. 20005
>
> Daniel A. Petalas
> United States Department of Justice
> Public Integrity Section
> 1400 New York Ave., N.W., 12th Floor
> Washington, D.C. 20005
>
> Christopher C. Fialko
> Rudolph, Widenhouse & Fialco
> 1800 Camden Road, Suite 105
> Charlotte, NC 28203
>
> U.S. Attorney's Office
> Attention: D. Scott Broyles and Edward Ryan
> 227 W. Trade Street, Suite 1650
> Charlotte, NC 28202
>
> Jonathan E. Buchan
> Helms Mulliss & Wicker, PLLC
> P.O. Box 31247
> Charlotte, NC 28231

Raymond E. Owens, Jr.
Kennedy, Covington & Lobdell & Hickman, LLP
214 N. Tryon Street, 47th Floor
Charlotte, NC 28202

Sarah W. Higgins
Kennedy, Covington & Lobdell & Hickman, LLPO
214 N. Tryon Street, 47th Floor
Charlotte, NC 28202

5. The Clerk is also directed to send a copy of this Memorandum and Order to the Honorable Richard L. Voorhees.

### IV. NOTICE OF APPEAL RIGHTS AND STAY

The parties are hereby advised, pursuant to 28 U.S.C. §636(b)(1), that written objections to the proposed findings of fact, conclusions of law, and orders contained in this Memorandum and Order must be filed within ten (10) days of its receipt.

**PROVIDED FURTHER**, this Order is hereby **STAYED** until the earlier of the district court's ruling on any written objections which are made and, in the absence of any such objections, the expiration of the time allowed to do so.

**SO ORDERED**, this 13th day of June, 2005.

*/s/ Carl Horn, III*
**CARL HORN, III**
**U.S. Magistrate Judge**